Julian W. Wells (JW-4893)
RIKER, DANZIG, SCHERER, HYLAND & PERRETTI LLP
500 Fifth Avenue, Suite 4920
New York, New York 10110
(212) 302-6574



-and-

RIKER, DANZIG, SCHERER, HYLAND & PERRETTI LLP
Headquarters Plaza
One Speedwell Avenue
Morristown, New Jersey 07962-1981
(973) 538-0800

Attorneys for Plaintiff
Primo Bedding Company, Inc.,
d/b/a Primo International

UNITED STATES DISTRICT COURT<br>SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| PRIMO BEDDING COMPANY, INC., D/B/A PRIMO INTERNATIONAL, <br><br> Plaintiff, <br><br> v. <br><br> JOHN TURANO and FRANK TURANO, <br><br> Defendants. | Civil Action No. 07 CIV 9427 <br><br><br> COMPLAINT |

Plaintiff Primo Bedding Company, Inc., d/b/a Primo International ("Plaintiff"), by way of Complaint against Defendants John Turano and Frank Turano (collectively, "Defendants"), alleges and says:

PARTIES

1.  Plaintiff is a foreign corporation, incorporated under the laws of Canada and having its principal place of business at 7000 Rue Hochelaga, Montreal, Quebec, Canada H1N 1Y7. It is also qualified to do business in the State of New York.

2. Upon information and belief, Defendant John Turano is an individual residing at 262 Barbara Street, Staten Island, New York 10306-1841.

3. Upon information and belief, Defendant Frank Turano is an individual residing at 358 Ardsley Street, Staten Island, New York 10306-1630.

## JURISDICTION AND VENUE

4. This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1332. The amount in controversy exceeds the sum of $75,000, exclusive of interest and costs, and there is complete diversity of citizenship between Plaintiff and Defendants.

5. Venue is proper pursuant to 28 U.S.C. § 1391(a).

## FACTS

6. On or about April 28, 2005, Plaintiff entered into a Warehouse Distribution Agreement (the "Agreement") with John Turano & Sons, Inc. ("JTS"), whereby, among other things, JTS agreed to warehouse and sell Plaintiff's products and Plaintiff agreed to invoice JTS on a weekly basis for goods sold from JTS's warehouse.

7. A true and correct copy of the Agreement is attached hereto as **Exhibit A**.

8. Pursuant to the Agreement, all of Plaintiff's inventory warehoused by JTS remained property of Plaintiff. Furthermore, pursuant to the Agreement, Plaintiff and JTS agreed, among other things, that all shrinkage or loss of Plaintiff's inventory warehoused by JTS is deemed a sale of merchandise and added to the weekly sales invoice.

9. On April 28, 2005, Plaintiff and Defendants entered into a Guaranty of Collection Agreement (the "Guaranty").

10. A true and correct copy of the Guaranty is attached hereto as **Exhibit B**.

11. Pursuant to the Guaranty, Defendants jointly and severally agreed, among other things, that:

> FOR VALUE RECEIVED, and in consideration of loans made or to be made or credit otherwise extended or to be extended by [Plaintiff] to or for the account of [JTS] from time to time and at any time, to induce [Plaintiff], in its discretion, to make such loans or extensions of credit, [Defendants] guarantee[] the due performance of all of the contracts and agreements with you, both present and future and any and all subsequent renewals, extensions, continuations, modifications, supplements and amendments thereof, and the collection by you of any and all sums which may be presently due and owing or which shall in the future become due and owing to you from [JTS].

12. In or about July 2007, JTS advised Plaintiff to pick up all of Plaintiff's remaining inventory held by JTS, which Plaintiff did on or about July 6, 2007.

13. As of July 6, 2007, JTS was indebted to Plaintiff for reported sales of Plaintiff's inventory in the amount of $87,436.44 and inventory reported "missing" having a value of $105,510.00, for a total amount owed to Plaintiff of $192,946.44.

14. On or about July 20, 2007, certain of JTS's creditors filed an involuntary petition against JTS in United States Bankruptcy Court for the District of New Jersey under Chapter 7 of the Bankruptcy Code. Accordingly, no claims are being asserted by Plaintiff against JTS in this Complaint.

15. On or about September 13, 2007, in connection with the JTS bankruptcy proceeding, the Honorable Kathryn C. Ferguson, U.S.B.J., entered an Order for relief under Chapter 7 of the Bankruptcy Code.

16. Although not required, Plaintiff has made reasonable efforts and has exercised due diligence to collect the amounts owed to Plaintiff pursuant to the Agreement from JTS. In addition, Plaintiff has received notice in connection with the JTS bankruptcy proceeding that it

should not file a proof of claim at this time, as it does not appear that there will be assets available for distribution to general creditors.

17. By way of letter, dated August 15, 2007, Plaintiff advised Defendants of the debt owed to Plaintiff by JTS and, pursuant to the Guaranty, demanded payment from Defendants, jointly and severally, in the amount of $192,946.44.

18. Despite demand, Defendants have failed and refused to fulfill their joint and several obligations to make payment for the debt owed by JTS to Plaintiff pursuant to the Guaranty.

## FIRST COUNT
### (Breach of Contract)

19. Plaintiff repeats the allegations of the foregoing paragraphs of this Complaint as if set forth at length herein.

20. As set forth above, pursuant to the Guaranty, Defendants jointly and severally agreed to guaranty performance of the Agreement and the collection of any and all sums due and owing to Plaintiff from JTS.

21. Despite demand, Defendants have failed and refused to make payment to Plaintiff pursuant to the Guaranty for the debt incurred by JTS.

22. Defendants' failure to fulfill their joint and several obligations to make payment to Plaintiff for the debt incurred to Plaintiff by JTS constitutes a breach of the Guaranty.

23. As a result of Defendants' breach of the Agreement, Plaintiff has been damaged in the amount of $192,946.44, plus interest, attorneys' fees and costs of suit.

WHEREFORE, Plaintiff demands judgment against Defendants, jointly and severally, in the amount of $192,946.44, plus accrued interest, collection costs, costs of suit, attorneys' fees and such further relief as the Court deems just and proper.

## SECOND COUNT
### (Breach of Covenant of Good Faith and Fair Dealing)

24. Plaintiff repeats the allegations of the foregoing paragraphs of this Complaint as if set forth at length herein.

25. There exists in every commercial transaction the implied duty of good faith and fair dealing.

26. Defendants' refusal to fulfill their obligations is a breach of the Guaranty perpetrated in bad faith and constitutes unfair dealing.

27. Defendants' failure to engage in good faith and fair dealing has caused damages to Plaintiff.

WHEREFORE, Plaintiff demands judgment against Defendants, jointly and severally, in the amount of $192,946.44, plus accrued interest, collection costs, costs of suit, attorneys' fees and such further relief as the Court deems just and proper.

## THIRD COUNT
### (Unjust Enrichment)

28. Plaintiff repeats the allegations of the foregoing paragraphs of this Complaint as if set forth at length herein.

29. Plaintiff fully completed all of its obligations in connection with the Agreement and the Guaranty.

30. By refusing Plaintiff its rights pursuant to the Guaranty, Defendants have wrongfully received the benefits of the Guaranty without fulfilling their concomitant obligations pursuant to the Guaranty.

31. Allowing Defendants to retain the benefits provided by Plaintiff without payment would be unjust.

32. As a direct and proximate result of Defendants' breach of the Guaranty, and unjust retention of the benefits of the Guaranty, Plaintiff has suffered damages.

WHEREFORE, Plaintiff demands judgment against Defendants, jointly and severally, in the amount of $192,946.44, plus accrued interest, collection costs, costs of suit, attorneys' fees and such further relief as the Court deems just and proper.

> RIKER, DANZIG, SCHERER, HYLAND
> & PERRETTI LLP
> Attorneys for Plaintiff Primo Bedding
> Company, Inc., d/b/a Primo International
>
> By: _____
>          Julian W. Wells (JW-4893)

Dated: October 19, 2007

# EXHIBIT A

11/22/04 LUN 09:40 FAX 5142561581         PRIMO INTERNATIONAL                    ☑002



# LETTER OF INTENT
## Warehouse Distribution Agreement
### Between
### John Turano & Sons, New Jersey
### and
### Primo International, Montreal

1. Turano agrees to segregate Primo's products in Turano's New Jersey warehouse.

2. Goods are being held in Turano warehouse for Turano's ability to service their marketing areas.

3. Turano must provide Primo with an insurance certificate indicating sufficient coverage which includes complete coverage such as fire, theft, floods, etc.

4. All merchandise will be held in Turano's New Jersey warehouse only, at no monthly, square footage or cubic footage cost to Primo.

5. Primo and Turano will agree on what products will be put into the warehouse. <u>Turano will send a purchase order to Primo for the merchandise it requires which Primo may or may not accept. Product shipped from Asia in accordance with Primo Direct Container program which will be priced at FOB destination prices supplied by Primo to Turano on an as needed basis.</u>

    <u>Turano will sell the product to its customers for its own account at a price of Turano's determination. Primo will invoice Turano at the prices negotiated.</u>

6. Turano will sign a UCC agreement to protect the goods which belong to Primo at all times.

7. Inventory remains property of Primo and can be removed by Primo at any time without prior notice to Turano.

1

11/22/04 MON 09:40 FAX 5142561581    PRIMO INTERNATIONAL                    ☒003

# Warehouse Distribution Agreement (cont'd)
Between
John Turano & Sons, New Jersey
and
Primo International, Montreal

8. Primo's sales rep, Mark Sample, will take inventory monthly. <u>Primo reserves the right to inspect its goods at any time during business hours.</u>

9. Turano is responsible for inventory and shrinkage.

10. All shrinkage or loss will be immediately <u>reported</u> to Primo by Turano. <u>The shrinkage will be deemed a sale of merchandise and added to the weekly sales report.</u>

11. <u>Turano will report the week's sales to Primo every Friday afternoon.</u> Primo will invoice Turano on a weekly basis for goods sold from Turano warehouse, payable net 7 days.

12. All payments to be wire transfers done on a weekly basis.

13. Primo is not responsible for container delays be it rail strikes, acts of God, etc.

14. Primo and Turano are responsible to flow containers jointly. Turano will project usage and rate of sale to allow Primo to flow containers.

15. Termination notice is 30 days.

16. <u>If Primo sells a customer from this warehouse Turano will receive a 10% commission on the net selling price.</u>

17. Upon termination, Primo will arrange for pick up of all merchandise with no storage or handling charges to Primo.

2

# LETTER OF INTENT
## Warehouse Distribution Agreement
### Between
### John Turano & Sons, New Jersey
### and
### Primo International, Montreal

Agreed and signed by:                              Agreed and signed by:

_____                    _____
David Itzkovitz, VP Sales & Marketing              John Turano
Primo International                                John Turano & Sons


Date _____                       Date _____

3

# EXHIBIT B



## GUARANTY OF COLLECTION

PRIMO INTERNATIONAL
7000 Rue Hochelaga Est.
Montreal (Quebec) H1N 1Y7

Gentlemen:

1. FOR VALUE RECEIVED, and in consideration of loans made or to be made or credit otherwise extended or to be extended by Primo International ("Primo") to or for the account of John Turano & Sons, Inc. of 1532 South Washington Avenue, Piscataway, New Jersey 08854 ("Borrower") from time to time and at any time, to induce Primo, in its discretion, to make such loans or extensions of credit, the undersigned guarantees the due performance of all of the contracts and agreements with you, both present and future and any and all subsequent renewals, extensions, continuations, modifications, supplements and amendments thereof, and the collection by you of any and all sums which may be presently due and owing or which shall in the future become due and owing to you from the Borrower. ("Obligations").

2. The undersigned hereby acknowledges that the undersigned has derived or expects to derive a financial or other advantage from each and every Obligation incurred by the Borrower to you.

3. This instrument is and shall be construed to be a continuing guaranty of collection limited only as set forth herein, and shall continue in full force and effect.

4. The undersigned does hereby waive any and all right to a trial by jury in any action or proceeding based hereon. This instrument cannot be changed or terminated orally, and shall be governed, construed and interpreted as to validity, enforcement and in all other respects in accordance with the laws of the State of New York, the jurisdiction of such state's courts being hereby consented to for all purposes in connection herewith.

5. The undersigned acknowledge that the total outstanding balance due to Primo pursuant to Turano's selling of Primo merchandise is at no point to exceed $25,000 without Primo's written consent.

Dated: April 28, 2005

_____          _____
JOHN TURANO, Guarantor                  FRANK TURANO, Guarantor